IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RORY V. HATICO, | CIVIL NO. 20-00584 JAO-KJM |
| Plaintiff, | |
| vs. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| PANASONIC AVIONICS CORPORATION, et al., | |
| Defendants. | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Rory Hatico ("Plaintiff") brings this action against his former employer Panasonic Avionics Corporation ("Defendant") regarding Plaintiff's furlough and eventual termination.  Plaintiff asserts five causes of action:  (1) wrongful termination in violation of public policy; (2) retaliation in violation of Hawaiʻi Revised Statutes ("HRS") § 378-62; (3) breach of contract; (4) intentional infliction of emotional distress ("IIED"); and (5) intentional interference with

1

prospective economic advantage.[1]  *See generally* ECF No. 1-2 at 3–4.  Before the Court is Defendant's Motion for Summary Judgment as to all of Plaintiff's claims ("Motion").  ECF No. 25.  For the following reasons, the Court GRANTS the Motion.

## I.   BACKGROUND

### A.   Facts

Unless otherwise indicated, the facts below are undisputed.

Defendant develops, sells, and maintains in-flight entertainment systems for commercial airline carriers.  ECF No. 26 ("Def. CSF") ¶ 1.  Defendant employs various levels of employees that maintain the entertainment systems while an airplane is stopped at an airport.  *See id.* ¶¶ 4, 8.  These employee classifications include Supervisors of Maintenance Services, Maintenance Service Representatives ("MSRs"), and Maintenance Service Technicians ("MSTs").  *Id.* ¶ 8.  There is also a Maintenance Service Lead position which performs maintenance duties but has additional supervisory duties.  *Id.* ¶ 9.  In April 2018, Defendant hired Plaintiff as an MSR at its line station located near Daniel K. Inouye International Airport ("HNL") in Honolulu.  *See id.* ¶¶ 29, 32; ECF No. 26-8 at 6.

---

[1]  Plaintiff included a passing reference to HRS § 368 *et seq.* in his Complaint, *see* ECF No. 1-2 at 4, but does not press any cause of action under that chapter or explain its relevance to this case.  To the extent Plaintiff intended to pursue a claim under any provision of HRS § 368, he has abandoned it by failing to raise the issue in opposition to Defendant's Motion for Summary Judgment.

2

Beginning in October 2019, Plaintiff was involved in three separate non-work-related car accidents.  ECF No. 29 ("Pl. CSF") ¶ 5.  Plaintiff took leave from work beginning in December 2019 and did not return to his job before Defendant furloughed and terminated him.  *Id.* ¶ 6; Def. CSF ¶ 36.  In January 2020, Plaintiff filed a claim for temporary disability benefits ("TDI") with Hawaii's Department of Labor and Industrial Relations, Disability Compensation Division ("DLIR").  Pl. CSF ¶ 7.  But Defendant's TDI insurance coverage in Hawai'i had lapsed in 2019.  *See id.* ¶ 10; Def. CSF ¶ 16.  After an investigation, in March 2020, DLIR concluded that Plaintiff was eligible for TDI benefits between December 14, 2019 and March 16, 2020 and sent Defendant a letter documenting its findings.  ECF No. 29-6 at 2–3.  On May 5, 2020, DLIR sent a follow-up letter concluding that Plaintiff was eligible for benefits through May 17, 2020, and requesting that Defendant pay Plaintiff's benefits.  ECF No. 29-10 at 2–3.  Defendant eventually paid Plaintiff his TDI benefits in July 2020.  Def. CSF ¶ 43.

Meanwhile, in March 2020, the COVID-19 pandemic struck the country.  *See id.* ¶¶ 44–45.  Air travel into Hawai'i plummeted and affected Defendant's business.  *See id.* ¶¶ 46–50.  For example, the number of "turns" — each time Defendant performed maintenance on an airplane's entertainment system during a stop at an airport — conducted at HNL in the months after the start of the pandemic fell over the corresponding months from the previous years.  *See id.* ¶ 4

3

(defining "turn"); ¶¶ 47–49 (documenting the reduction in turns at the HNL line station).

Kevin Cooper ("Cooper") was Defendant's Head of PTS Line Maintenance Operations. *See* ECF No. 26-2 at 1. In that position, he oversaw operations and staff at line stations, including reviewing the volume of turns. *Id.* Matthew Savage ("Savage") reported directly to Cooper and oversaw line maintenance operations in the Americas. ECF No. 26-7 at 1. Both were based at Defendant's headquarters in California. Def. CSF ¶ 6. Together, near the end of March 2020, Cooper and Savage decided to implement furloughs and layoffs at many line stations, including that at HNL, effective April 2020. *Id.* ¶ 52. Cooper and Savage determined that layoffs and furloughs of "Line Maintenance Personnel" (MSRs and MSTs) would be by seniority starting with the junior-most. *Id.* ¶ 53.

Initially, Cooper and Savage determined there should be two layoffs and three furloughs at the HNL line station. *Id.* ¶ 55. Of the Line Maintenance Personnel, Plaintiff was the fourth-most recent hire. *See id.* ¶¶ 58–59. Thus, on April 12, 2020, Defendant furloughed Plaintiff. *Id.* ¶ 64. In June 2020, Cooper and Savage decided Defendant should lay off two more Line Maintenance Personnel from the HNL line station, again based on seniority. *Id.* ¶¶ 68–70. This second round of layoffs included Plaintiff and was effective July 1, 2020. *Id.* ¶¶

69, 71, 75.  According to Defendant, it laid off over 840 U.S. employees from April to July 2020.  *Id.* ¶ 76.

## B.   Procedural History

On December 11, 2020, Plaintiff filed suit in the Circuit Court of the First Circuit of Hawaiʻi.  *See* ECF No. 1-2.  He asserted the five causes of action referenced above.  Defendant filed an Answer to the Complaint, *see* ECF No. 1-3, but then removed the action to the United States District Court for the District of Hawaii, *see* ECF No. 1.  Defendant now moves for summary judgment as to all of Plaintiff's claims.  *See* ECF No. 25.

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In a motion for summary judgment, the court must view the facts in the

light most favorable to the nonmoving party.  *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c).  The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory.  *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial.  *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e).  There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case.  *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994); *Blue Ocean*, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986)) (footnote omitted). Inferences must be drawn in favor of the nonmoving party. *See id.* However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law. *See id.* at 631–32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988)).

## III.   DISCUSSION

### A.   Wrongful Termination

Because this is a diversity case, substantive Hawaiʻi law applies. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996). Plaintiff's first cause of action for wrongful termination in violation of public policy is based on *Parnar*

*v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625 (1982).  *See* ECF No. 1-2 at 4.  Plaintiff claims that Defendant laid him off because he filed an application for TDI benefits, which he refers to as whistleblowing.  *Id.*; *see also* ECF No. 28 at 6.  In opposition to Defendant's Motion, Plaintiff now also seems to contend that the hiring of another employee as an MSR Lead was pretext so that Defendant could terminate Plaintiff.  *See* ECF No. 28 at 6.

Defendant argues that even if filing a TDI claim is protected by public policy, Plaintiff has not raised a factual issue as to causation — *i.e.*, he has not offered any evidence that he was fired *because of* his filing of the TDI claim.  *See* ECF No. 25-1 at 19–23.  Regarding Plaintiff's second theory, Defendant asserts that the MSR Lead's status is unrelated to Plaintiff's claim for a host of reasons. *See* ECF No. 31 at 10–14.

To establish liability under *Parnar*, a plaintiff must prove that he "(1) engaged in a protected activity such as refusing to commit an unlawful act, performing an important public obligation such as whistle blowing, or exercising a statutory right; (2) he was terminated because of this protected activity; and (3) the termination violated a clear mandate of public policy."  *McCarthy v. Hawaiian Parasail, Inc.*, No. Civil 14-00310 LEK-RLP, 2014 WL 6749415, *9 (D. Haw. Nov. 30, 2014) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1067 (9th Cir. 2002)).  As to the second element, a plaintiff must demonstrate a causal

connection between the protected activity and his termination.  *See Villiarimo*, 281 F.3d at 1068.

### 1.    Retaliation for Filing TDI Claim

Defendant argues it is entitled to summary judgment on Plaintiff's assertion of retaliation because (1) Cooper and Savage had no idea about Plaintiff's filing for TDI benefits; and (2) there were valid business reasons to lay off Plaintiff.  ECF No. 25-1 at 19.  Thus, Defendant contends there is no evidence of causation.  *Id.*  Plaintiff's arguments are sparse and disjointed.  But read in the light most favorable to him as the non-moving party, he asserts there is a factual question as to causation because (1) someone who worked for Defendant knew about Plaintiff's claim for benefits and (2) there is a close temporal relation between Plaintiff's filing for TDI benefits and his termination.  *See* ECF No. 28 at 6.  Regardless, Plaintiff's arguments fail because he has not satisfied his burden at summary judgment to proffer specific material rebutting Defendant's evidence.

Plaintiff's argument that someone who worked for Defendant knew about his claim for TDI benefits is insufficient to create a causal connection between the allegedly protected activity and his termination.  It is undisputed that Cooper and Savage formed the plan to lay off and furlough certain employees at the HNL line station by seniority.  Def. CSF ¶¶ 53, 55–56; ECF No. 30 ¶¶ 53, 55–56.  Further, Cooper, Savage, and the supervisor who implemented the plan all testified they

9

had no knowledge of Plaintiff's TDI benefits application.  Def. CSF ¶ 57.

Plaintiff's only response to the supervisors' lack of knowledge is that Defendant

"was on notice."  ECF No. 30 ¶ 57.

To survive summary judgment on his wrongful termination claim, Plaintiff

must present evidence from which a reasonable jury could find that those who

made the decision on his termination knew about his alleged protected activity.

*See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir.

2003) (affirming district court's grant of summary judgment to defendant on a

retaliation claim when there was no evidence that the decisionmakers who refused

to hire plaintiff knew that she had engaged in protected activity); *see also Douglas*

*v. DeJoy*, 848 F. App'x 245, 247 (9th Cir. 2021) ("[Plaintiff] fails to establish the

decisionmaker's knowledge of his EEO activity, which is essential to show

causation." (citation omitted)); *Stephens v. Nike, Inc.*, 611 F. App'x 896, 897 (9th

Cir. 2015) (concluding summary judgment proper "because [plaintiff] failed to

raise a genuine dispute of material fact as to whether the relevant decision maker

was aware of his protected activity" (citations omitted)).  Plaintiff supports his

assertion that Defendant was "on notice" by citing to Defendant's Exhibit E and

Plaintiff's Exhibit 1.  But Defendant's Exhibit E is an email chain in which

officials from Defendant's parent corporation — which is headquartered in New

Jersey, *see* Def. CSF ¶ 11 — discuss TDI coverage in Hawaiʻi generally, without

10

any mention of Plaintiff.  *See* ECF No. 26-12.  There is no evidence that this information was forwarded to Defendant's decisionmakers in Southern California.

Likewise, Plaintiff's Exhibit 1 is a partial transcript of Plaintiff's deposition. *See* ECF No. 29-3.  As support for his assertion that Defendant was on notice about his TDI claim, Plaintiff directs the Court to page 93 of the transcript, ECF No. 29-3 at 14, but that page does not demonstrate Defendant's knowledge.  Rather, the prior pages discuss DLIR's attempts to get in touch with Defendant to discuss its lack of TDI coverage.  *See id.* at 13–14.  None of the testimony, even read favorably, suggests that Cooper and/or Savage knew about Plaintiff's TDI claims.

Even though the Court need not consider materials that Plaintiff fails to raise in his opposition, the Court has reviewed the record and can find no evidence linking Plaintiff's filing of a TDI claim to his termination.  *See* Fed. R. Civ. P. 56(c)(3); LR56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.  Further, the court shall have no independent duty to review exhibits in their entirety, but rather will review only those portions of the exhibits specifically identified in the concise statements.").  The closest Plaintiff comes to connecting the dots is in his declaration that he (1) mailed his TDI form to Defendant in early February 2020,

and (2) informed an HR official on April 10, 2020 that he was being retaliated against.  *See* ECF No. 29-2 at 3–4.

As to the mailed TDI form, Exhibit 3 attached to Plaintiff's declaration demonstrates that someone with the last name Biollo at Defendant's headquarters received the letter on February 18, 2020.  *See* ECF No. 29-5 at 2.  There is no evidence about what happened to the letter afterward.  Although the Court needs to read this evidence in the light most favorable to Plaintiff, it will not just assume that this letter made its way through Defendant's headquarters to Cooper and Savage and affected their decision to implement layoffs later that year.

As to Plaintiff's statement that he told HR about his retaliation on April 10, 2020, Exhibit 6 attached to the declaration shows what Plaintiff said *in response to* being furloughed.  *See* ECF. No. 29-8 at 2–3.  The order of events is significant. Plaintiff did not allege retaliation and then suffer consequences; he was furloughed and then accused Defendant of retaliation.  Thus, this email chain fails to raise a factual issue on causation as to Plaintiff's furlough.

Finally, Plaintiff argues that the timing of his furlough and termination alone raises a factual issue as to causation.  ECF No. 28 at 6.  Defendant first responds that there is not a close temporal relation between the filing of the TDI claim and Plaintiff's termination.  *See* ECF No. 31 at 8–9.  Second, Defendant argues that temporal relation is insignificant on account of Savage's and Cooper's lack of

knowledge about Plaintiff's claim.  *Id.* at 9.  Third, Defendant asserts that the

pandemic and concomitant downturn in air traffic rebut any implication of

causation from the temporal proximity of the alleged protected behavior and the

adverse employment decisions.  *Id.* at 9–10.

While sometimes temporal proximity alone is sufficient to raise a triable

issue on causation, *see Clark County School District v. Breeden*, 532 U.S. 268, 273

(2001), the evidence in this case does not support such an inference.  Plaintiff first

filed his claim for TDI benefits with DLIR on January 27, 2020.  Pl. CSF ¶ 7.  On

March 16 and May 5, 2020, DLIR sent Defendant letters requesting that it pay

Plaintiff his benefits.  *See* ECF Nos. 29-6, 29-10.  Defendant furloughed Plaintiff

effective April 12 and laid him off effective July 1.  Although these events

occurred within a few months of each other, the lack of evidence that Cooper and

Savage knew about Plaintiff's claim weakens any inference of causation raised by

the temporal proximity, and — combined with the circumstances described below

— defeats Plaintiff's prima facie case.  *See Lewis v. Ameron Int'l*, Civil No. 12-

00453 DKW-RLP, 2014 WL 2968918, *6–7 (D. Haw. July 1, 2014) (holding that

temporal proximity was insufficient to raise a triable issue when decisionmakers

were not aware of the alleged protected activity and when intervening

circumstances interrupted any chain of causation); *see also Clark Cty. Sch. Dist.*,

532 U.S. at 271–72 (recognizing that a defendant's lack of knowledge of a

protected activity affects any temporal proximity analysis).

Moreover, courts need not consider temporal proximity in isolation —

circumstances matter.  As one court in this district has noted:

> In *Clark County School District v. Breeden*, the United
> States Supreme Court noted that the requisite temporal proximity
> "must be very close" if temporal proximity is the only evidence
> of causation.  532 U.S. 268, 273 (2001) (per curiam) (citations
> and internal quotation marks omitted).   However, the Ninth
> Circuit also "cautioned that courts should not engage in a
> mechanical inquiry into the amount of time between the
> [protected activity] and alleged retaliatory action."  *Anthoine v.
> N. Cent. Cntys. Consortium*, 605 F.3d 740, 751 (9th Cir. 2010)
> (citation omitted).   "There is no 'bright line' rule providing that
> any particular period is always too long or always short enough
> to support an inference."  *You v. Longs Drugs Stores Cal., LLC*,
> 937 F. Supp. 2d 1237, 1258 (D. Haw. 2013) (citing *Coszalter v.
> City of Salem*, 320 F.3d 968, 977–78 (9th Cir. 2003)), *aff'd*, 594
> F. App'x 438 (9th Cir. 2015).  Therefore, "whether an adverse
> employment action is intended to be retaliatory is a question of
> fact that must be decided in the light of the timing and the
> surrounding circumstances."  *Anthoine*, 605 F.3d at 751
> (brackets, citation, and quotation marks omitted).

*Yamada v. United Airlines, Inc.*, CIV. NO. 19-00551 LEK-KJM, 2021 WL

2093692, at *7 (D. Haw. May 24, 2021) (alterations in original).  Even apart from

the lack of evidence that Cooper and Savage knew anything about Plaintiff's

complaint, the circumstances surrounding Plaintiff's termination demonstrate that

there is no triable issue as to causation.  At risk of understating the matter, the

Court notes that other events in the world between March and July 2020 are relevant to the Court's inquiry into Plaintiff's case.

In March 2020, the United States declared the COVID-19 pandemic a national emergency. *See* ECF No. 26-20. The disruption that the pandemic caused is well understood and documented, and included a steep decline in air travel. *See* Def. CSF ¶¶ 44–47. Restrictions and conditions for travel to Hawaiʻi surely further reduced air travel to the islands. *See id.* ¶ 45 (describing Hawaiʻi's 14-day quarantine requirement for incoming travelers). Less air travel meant less need for maintenance and less work for Defendant's employees. *Id.* ¶¶ 47–51.

In this context, Cooper and Savage formulated their plan for furloughs and layoffs at many line stations, including the HNL line station. *Id.* ¶ 52. Implementing Cooper and Savage's plan, Defendant first laid off two Line Maintenance Personnel who were more junior than Plaintiff. *Id.* ¶¶ 60–62. Then, in July 2020, two more Maintenance Line Personnel employees were laid off: Plaintiff and an MST. *See id.* ¶¶ 59, 75. Defendant laid off one final MSR in October 2020. *Id.* ¶ 77. That so many other employees were laid off at or around the same time as Plaintiff, in accordance with their seniority, negates any inference raised by the temporal relation between Plaintiff's purported whistleblowing and his termination.

For the foregoing reasons, the Court grants Defendant's motion as to Plaintiff's wrongful termination cause of action based on the theory that Defendant terminated Plaintiff because of his filing of a claim for TDI benefits.

### 2.     Relationship to MSR Lead

In opposition to Defendant's Motion, Plaintiff raises another theory to support his wrongful termination claim.  He argues that Zac Fliss was hired to be an MSR Lead, despite being underqualified, to create a pretext to terminate Plaintiff.  ECF No. 28 at 6; ECF No. 29-2 at 2.  Plaintiff did not present this theory in his Complaint.  *See* ECF No. 1-2.  But, in his declaration, Plaintiff asserts that he was more senior than Fliss, ECF No. 29-2 at 5, and that Fliss was unqualified for the MSR Lead position because Fliss lacked the proper FAA licensing until February 2020, *id.* at 2.[2]

First, Plaintiff's argument about seniority fails because Fliss, as an MSR Lead, was in a different classification than Plaintiff.  Plaintiff, as an MSR, was classified as part of Line Maintenance Personnel with MSTs.  *See* ECF No. 26-2 at

---

[2]  Plaintiff also claims that he was told to sign off on log entry books that Fliss had done, even though it was illegal under FAA regulations, and that Defendant changed his schedule after his refusal.  ECF No. 29-2 at 2.  This allegedly occurred around October or November 2019 and Plaintiff told another MSR Lead that he would not sign off on others' work.  *Id.*  Plaintiff does not mention any of these arguments in his opposition and does not assert that he was terminated because of his refusal or that anyone other than the MSR Lead knew about Plaintiff's stance. Thus, the Court will not consider this allegation.

3.  MSR Leads are not considered Line Maintenance Personnel.  *See id.*  Plaintiff does not dispute that MSR Leads have additional duties beyond Line Maintenance Personnel.  Def. CSF ¶ 9; ECF No. 30 ¶ 9.  As such, Plaintiff's seniority relative to Fliss's is immaterial considering that Cooper and Savage determined that staff reductions at the HNL line station would come from Line Maintenance Personnel.  Plaintiff does not argue that the decision to focus on Line Maintenance Personnel was pretextual or arbitrary.

Second, Plaintiff's argument that Defendant hired Fliss as a pretext for terminating Plaintiff fails to create a triable issue.  Fliss was hired as an MSR Lead in April 2019, *see* ECF No. 31-2 at 1, approximately nine months before Plaintiff filed a claim for TDI benefits, one year before Defendant furloughed Plaintiff, and fifteen months before Defendant laid off Plaintiff.  Further Cooper and Savage developed their plan for furloughs and layoffs in March 2020.  Def. CSF ¶ 52.  Plaintiff has not explained why Defendant would have wanted to terminate Plaintiff in April 2019 or how Fliss's hiring is connected to Cooper and Savage's decision to furlough and lay off Line Maintenance Personnel.

Thus, the Court also concludes that Plaintiff has not raised a triable issue on this second theory of unlawful termination and grants Defendant's motion as to this cause of action.

**B.     Whistleblower Retaliation**

Plaintiff also alleges that he was furloughed and/or terminated in violation of

the Hawai'i Whistleblowers' Protection Act ("HWPA"), HRS § 378-62.

As relevant, the HWPA provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
>> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>>
>>> (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States[,]
>>>
>>> . . .
>>
>> unless the employee knows that the report is false[.]

HRS § 378-62.

"In *Crosby v. State Department of Budget & Finance*, 76 Hawai'i 332, 342,

876 P.2d 1300, 1310 (1994), the Hawaii Supreme Court essentially adopted the

familiar *McDonnell Douglas* burden-shifting framework for claims under Hawaii's

Whistleblowers' Protection Act." *Chan v. Wells Fargo Advisors, LLC*, 124 F.

Supp. 3d 1045, 1055 (D. Haw. 2015).  "To establish a prima facie case of

retaliation, a plaintiff must prove (1) she engaged in a protected activity; (2) she

suffered an adverse employment action; and (3) there was a causal connection

18

between the two." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008) (citation omitted).  If Plaintiff establishes a prima facie case, "the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point, the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation." *Id.* (citation omitted).

Defendant argues that Plaintiff cannot establish a prima facie case, and that even if he can, Defendant has offered a legitimate non-discriminatory reason for why Plaintiff would have been laid off regardless of any purported whistleblowing. *See* ECF No. 25-1 at 25–26.

First, Defendant argues that Plaintiff did not engage in protected activity when he submitted his TDI claim because Plaintiff did not believe Defendant had committed any legal violation.  *Id.* at 25.  Although it is true that Plaintiff did not know that Defendant's coverage had lapsed when he filed his claim, *see* ECF No. 26-8 at 32, Defendant's failure to maintain TDI coverage likely violated certain provisions of HRS § 392.  Further, Plaintiff's later discussions with DLIR and DLIR's letters to Defendant could reasonably be construed as attempts to enforce a law.  Regardless, the Court need not decide the matter because Plaintiff fails to establish the causation element of a prima facie case of retaliation.

Plaintiff fails to produce any evidence of causation as addressed above in the section on Plaintiff's unlawful termination claim.  While Plaintiff's "burden of

19

proof at the prima facie stage of the case is minimal," proximity in time between the protected activity and the adverse employment action is not always sufficient to raise a triable issue. *See Yamada*, 2021 WL 2093692, at *6–7 (granting defendant summary judgment under the HWPA when there were thirteen days between protected activity and termination but the other evidence in the record demonstrated no causal connection).  As stated above, Plaintiff cannot identify any direct evidence that Defendant's decisionmakers had any knowledge of Plaintiff's filing a TDI benefits claim.  In addition, that Plaintiff's furlough and layoff occurred during the midst of the beginnings of the COVID-19 pandemic and the related downturn in air traffic, defeats any inference of causation.

Alternatively, even if Plaintiff has established a prima facie case, the Court concludes that Defendant has offered a legitimate nondiscriminatory reason for terminating Plaintiff:  the effects of the pandemic on Defendant's business.  Plaintiff meanwhile has failed to counter with any evidence of pretext.  Plaintiff would have to raise a triable issue that Defendant's decision to lay off other employees based on seniority both before and after Plaintiff — during a national (and international) crisis — was a smokescreen to punish Plaintiff for seeking TDI benefits.  Without any evidence, Plaintiff's theory is simple speculation.

The Court grants Defendant's Motion as to Plaintiff's HWPA cause of action.[3]

## C.    Breach of Contract

In his opposition, Plaintiff declines to address Defendant's arguments against his breach of contract claim.  Accordingly, the Court finds that Plaintiff has abandoned this claim.  *See Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 919 (N.D. Cal. 2016) ("When a non-moving party opposes summary judgment with respect to some claims, but not others, 'a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.'" (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014)) (other citations omitted)).  Thus, the Court grants Defendant's Motion as to Plaintiff's breach of contract cause of action.

## D.    IIED

Although Plaintiff does not explain the basis for his IIED claim in his opposition, it is apparently premised on Defendant's (1) furlough of plaintiff; (2) termination of plaintiff; (3) delay in paying Plaintiff's TDI benefits; (4) failure to

---

[3]  Plaintiff did not raise in his opposition any other possible whistleblowing activity besides filing his TDI claim.  However, during his deposition, he suggested that he was about to report some "FAR Part 145 violations."  *See* ECF No. 26-8 at 31.  To the extent Plaintiff has not abandoned this theory, he fails to raise a triable issue as to causation because he admits that he did not have any evidence that anyone in management at Defendant knew that he was about to report the violations.  *See id.*

respond to Plaintiff's attorney's letter about workers' compensation; and (5) decision not to furlough or terminate Fliss even though he was hired after Plaintiff. *See* ECF No. 26-8 at 40–41.

"[T]he elements of an action for [IIED] are 1) that the conduct allegedly causing the harm was intentional or reckless, 2) that the conduct was outrageous, and 3) that the conduct caused 4) extreme emotional distress to another." *Hac v. Univ. of Hawai'i*, 102 Hawai'i 92, 95, 73 P.3d 46, 49 (2003). "The terms 'unreasonable' and 'outrageous' have been used interchangeably and have been construed to mean 'without just cause or excuse and beyond all bounds of decency.'" *Lee v. Aiu*, 85 Hawai'i 19, 34 n.12, 936 P.2d 655, 670 n.12 (1997) (citation omitted). The Hawai'i Supreme Court, relying on the Restatement (Second) of Torts, has identified the "outrageous" conduct rendering actionable an IIED claim:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

22

*Ross v. Stouffer Hotel Co. (Hawai'i) Ltd.*, 76 Hawai'i 454, 465 n.12, 879 P.2d 1037, 1048 n.12 (1994) (quoting Restatement (Second) of Torts § 46 cmt. d).

The Restatement defines severe emotional distress as "mental suffering, mental anguish, mental or nervous shock [and] . . . includ[ing] all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." *Hac*, 102 Hawai'i at 106, 73 P.3d at 60 (alterations in original) (footnote, citation, and internal quotation marks omitted).

Even if Plaintiff could show that that the adverse actions he suffered were retaliatory or discriminatory, that alone is insufficient to establish that Defendant's conduct was outrageous for the purposes of an IIED claim. *See, e.g.*, *Simmons v. Aqua Hotels & Resorts, Inc.*, 130 Hawai'i 325, 332, 310 P.3d 1026, 1033 (App. 2013). Here, nothing in the record rises to the level of outrageous. The Court grants Defendant's Motion on Plaintiff's IIED claim.

## E.     Intentional Interference with Prospective Economic Advantage

Again, because Plaintiff declined to address this cause of action in his opposition, the Court deems it abandoned and grants Defendant's Motion on this claim. *See Marentes*, 224 F. Supp. 3d at 919.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment.  There being no remaining claims in this case, the Clerk's Office is DIRECTED to enter final judgment in favor of Defendant and to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, November 29, 2021.



Jill A. Otake
United States District Judge

---

Civil No. 20-00584 JAO-KJM, *Hatico vs. Panasonic Avionics Corporation, et al.*; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT